IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARMELA NASH,

      Plaintiff,

      v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Civil Action No. 17-964

O R D E R

AND NOW, this 18th day of September, 2018, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 12), filed in the above-captioned matter on November 28, 2017,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10), filed in the above-captioned matter on October 30, 2017,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.**    **Background**

On October 18, 2013, Plaintiff Carmela Nash filed a claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and a claim for

supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Specifically, Plaintiff claimed that she became disabled on February 1, 2012, due to a number of physical conditions, none of which are at issue here, as well as bipolar disorder and personality disorder. (R. 203).

After being denied initially, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on October 19, 2015. (R. 39-91). In a decision dated December 22, 2015, the ALJ denied Plaintiff's request for benefits. (R. 15-38). The Appeals Council declined to review the ALJ's decision on May 26, 2017. (R. 1-7). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the

[Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922. If the claimant fails to show that his or her

3

impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

### III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since February 1, 2012. (R. 21). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had certain severe impairments, specifically,

bipolar disorder, personality disorder, drug abuse, fibromyalgia/osteoarthritis, asthma, irritable bowel syndrome, obesity, mild/early Bell's Palsy, migraine headaches, and carpal tunnel syndrome/medial epicondylitis. (R. 21). The ALJ found that Plaintiff's impairments, including substance abuse disorder, met section 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.920(d)). (R. 21). However, the ALJ further concluded that, if Plaintiff stopped the substance use, she would have continued to have a severe impairment or combination of impairments, but that she would not have had an impairment or combination of impairments that met any of the listings to satisfy Step Three. (R. 23).

The ALJ next found that, if Plaintiff stopped the substance use, she retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she had to be afforded the option to perform the work sitting or standing, changing positions at a maximum frequency of thirty minutes; was limited to occasional postural maneuvers; had to avoid concentrated exposure to extreme cold and heat, humidity, fumes, odors, dusts, gases, and other pulmonary irritants; was limited to simple, routine and repetitive tasks that are not fast paced and involve only simple work decisions; was limited to only incidental collaboration with coworkers and the public, and could collaborate with a supervisor for thirty minutes per day, (where collaboration is defined as actively working with others, not merely working in proximity to others); and was limited to frequently but not continuously using her hands. (R. 25).

At Step Four, the ALJ found that, if Plaintiff stopped the substance use, she would have been unable to perform past relevant work, and he moved on to Step Five. (R. 33). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, and if Plaintiff stopped the substance use,

5

Plaintiff could perform jobs that exist in significant numbers in the national economy, such as retail marker, folding machine operator, and garment sorter. (R. 34-35). Accordingly, the ALJ found that, because the substance use disorder was a contributing factor material to the determination of disability, Plaintiff was not disabled. (R. 35).

## IV. Legal Analysis

Plaintiff argues that the ALJ failed to fully explain and properly evaluate relevant evidence of record when determining Plaintiff's mental RFC without substance use. Because the Court agrees that the ALJ did not sufficiently discuss certain evidence relevant to Plaintiff's symptoms after she stopped using marijuana, the Court cannot find that Plaintiff's RFC is supported by substantial evidence. Accordingly, the Court will remand the case for further consideration.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. §§ 404.1545(a), 416.945(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the

evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Plaintiff's complaints in this case include that she suffered from debilitating symptoms caused by her poor mental health, including mood issues, trouble interacting appropriately with others, sleep problems, and anger issues. The ALJ found that, with marijuana use, Plaintiff had marked restrictions in activities of daily living and in social functioning and that, as noted, supra, when her substance use disorder was included, her impairments met Listing 12.09. (R. 21-22). The ALJ further determined, however, that without marijuana use, Plaintiff's limitations were less intense, and that she then had only moderate restrictions in activities of daily living, social functioning, and concentration, persistence and pace. (R. 32). The ALJ concluded that, because her substance use disorder was a contributing factor, Plaintiff would not have been disabled if she stopped her substance use, and she thus had not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of his decision. (R. 35). In explaining how he reached this conclusion, however, the Court finds that the ALJ did not provide an altogether accurate summary of Plaintiff's medical records.

Specifically, the Court finds that the ALJ's description of Plaintiff's treatment records from Mercy Behavioral Health does not clearly portray the full range of behavior and symptoms Plaintiff displayed after she stopped using marijuana. For example, although the ALJ described Plaintiff as being attentive during group therapy sessions and showing improved mood and sleep, his description of Plaintiff as showing "continued" improvement and engaging in "continued" active participation in group therapy appears to be an overstatement. (R. 31). While it is true that on many occasions Plaintiff was attentive and appropriately engaged in those sessions (R. 656, 658, 660, 666, 668, 678, 679, 682, 691, 705, 706, 714, 716, 720, 722, 725, 726), there

were also numerous occasions when she was disengaged and withdrawn, irritable, depressed, sarcastic, or abrasive and disrespectful to the other attendees, and there were times when she actually slept through or simply left sessions. (R. 660, 680, 681, 682, 692, 693, 700, 701, 702, 705, 707, 715, 716, 718, 720, 723, 726).

While the ALJ blames an uptick in Plaintiff's difficulties during this time on a suggested relapse—and states that such problem behavior at that time further establishes the relationship between her active drug use and the degeneration in her ability to interact with others—it is not clear to the Court that that was the case. (R. 31). The update "eIntegrated Service Plan" to which the ALJ refers to justify this explanation for Plaintiff's worsening of symptoms, dated October 26, 2015, states in a comment that Plaintiff was "Clean 2 weeks from MJ." (R. 670). The Court notes, however, that this same comment is present in a nearly identical initial "eIntegrated Service Plan" dated September 16, 2015, when Plaintiff began her treatment there (which is also consistent with her report of having last used marijuana on September 1, 2015). (R. 730). Since the ALJ cites to no other documentation indicating that Plaintiff had relapsed and had begun using marijuana again, and since it also seems possible that this information was simply reprinted from one electronic document to the next when her case came up for review, the Court finds this interpretation by the ALJ—that Plaintiff exhibited increased difficulties during this time because of a relapse—to be not entirely reliable.

Accordingly, the Court finds the ALJ's discussion and evaluation of Plaintiff's medical records from Mercy Behavioral Health to be insufficient in this particular case. Upon review, the Court cannot agree with the ALJ's summary indicating that those records show Plaintiff displaying continued improvement in her symptoms after she stopped using marijuana. The Court also finds that, considering the unique facts of this case, the ALJ's explanation calls into

question the appropriateness of his RFC finding, and the RFC formulated by the ALJ is therefore not supported by substantial evidence. While the ALJ is certainly permitted to find that Plaintiff's symptoms improved sufficiently when she stopped using marijuana such that she could be found to be not disabled, the Court finds that the ALJ's explanation for reaching that conclusion here is simply insufficient. Thus, remand is required to allow for further discussion as to the ALJ's evaluation of the evidence in this regard and his ultimate formulation of Plaintiff's RFC.

Additionally, the ALJ should, of course, ensure that proper weight be accorded to all the opinion and medical evidence presented in the record. Further, the ALJ should verify that his conclusions concerning Plaintiff's RFC—as well as his findings regarding the credibility of all of Plaintiff's symptoms—are fully explained, in order to eliminate the need for any future remand.

**V.     Conclusion**

In short, because the ALJ failed to fully and properly address the relevant evidence of record concerning Plaintiff's mental health symptoms, the Court finds that substantial evidence does not support the ALJ's RFC determination, and his ultimate decision, in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch<br>
United States District Judge

ecf:         Counsel of record